UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **J.D. FIELDS, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:12-cv-2605 |
| | § | |
| **INDEPENDENT ENTERPRISES, INC.** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, for Improper Venue, and, in the alternative, for Forum Non Conveniens. After reviewing the response, reply, and the applicable law, the Court finds that Defendant's Motion must be **GRANTED**.

**I. FACTS**

Defendant Independent Enterprises, Inc. ("Defendant" or "Independent") is a water main contractor for construction projects in the United States. Plaintiff J.D. Fields, Inc. ("Plaintiff" or "Fields") is a supplier of structural steel products. Defendant contacted Plaintiff in February 2012 to obtain information about its sheet piling products for one of Defendant's Pennsylvania construction projects. Plaintiff's Massachusetts-based East Coast Sales office provided pricing and other information concerning Plaintiff's sheet piling products. (Doc. No. 2-2.) Independent issued its formal Purchase Order No. 51359 for Plaintiff's Hoesch 1205k interlocking sheet piling. (Doc. No. 2-3.) On the Purchase Order form, Defendant identified the

1

Plaintiff as "JD Fields & Company," located at "2 Main Street, Suite 2B, Plymouth MA." Fields shipped the sheet pilings from its Nazareth, Pennsylvania office to Independent's job site in Pittsburgh, Pennsylvania.

When Defendant attempted to install the sheet pilings, Defendant alleges that it discovered significant latent defects. Defendant alleges that, because of the defects, it incurred expenses that exceeded the jurisdictional limit of $75,000. Plaintiff alleges that the sheet pilings in question met the appropriate "ASTM-A-527 Grade 50" specification provided for in the sales contract, and thus Plaintiff tendered performance under its sales contract. Plaintiff claims that Defendant breached the contract by not paying for the sheet pilings.

Defendant claims it notified Plaintiff of the defects, but after no action, Defendant filed a lawsuit against Plaintiff in the Court of Common Pleas of Allegheny County, Pennsylvania. Plaintiff alleges that Defendant has failed to pay Plaintiff and filed a lawsuit in Harris County, Texas. According to Plaintiff, Defendant is liable for $104,547.51, which exceeds the jurisdictional limit of $75,000. Thus, Defendant removed the lawsuit to this court.

## II. LEGAL STANDARD

Defendant files this Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2), Motion to Dismiss for Improper Venue under Rule 12(b)(3), and in the alternative, Motion to Dismiss or Transfer for Forum Non Conveniens. Because the Court finds that it lacks jurisdiction over Defendant and that venue is not proper in this Court, the Court need not consider Defendant's argument concerning forum non conveniens.

Federal Rule of Civil Procedure 12(b)(2) governs dismissal for "lack of personal jurisdiction." Fed.R.Civ.P. 12(b)(2). "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction

2

exists. The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices. This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." *Luv N' care, Ltd. v. Insta–Mix, Inc.,* 438 F.3d 465, 469 (5th Cir.2006) (internal citations omitted). A federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted by a state court under applicable state law. *Cycles, Ltd. v. W.J. Digby, Inc.,* 889 F.2d 612, 616 (5th Cir.1989); *Rittenhouse v. Mabry,* 832 F.2d 1380, 1382 (5th Cir.1987). "The state court or federal court sitting in diversity may assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution." *Cycles*, 889 F.2d at 616 (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1265 (5th Cir.1983)).

Texas' long-arm statute affords Texas courts' jurisdiction to the full extent permitted by the United States Constitution. *Televentures, Inc. v. Int'l Game Tech.,* 12 S.W.3d 900, 907 (Tex. App. 2000). "Thus, the only limitations on Texas courts in asserting personal jurisdiction over a nonresident defendant are those imposed by the due process clause of the Fourteenth Amendment." *Id.* (citing *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 413-14 (1984)).

"Due process requires a showing that the nonresident defendant has purposefully established 'minimum contacts' with Texas and that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). "Under the minimum contacts analysis, [courts] must determine whether the nonresident defendant has purposely availed itself of the privilege of conducting

activities within the forum state, thus invoking the benefits and protections of the state's laws." *Experimental Aircraft Ass'n, Inc. v. Doctor,* 76 S.W.3d 496, 504 (Tex. App. 2002)).

Federal Rule 12(b)(3) allows defendants to move for dismissal based on improper venue. Fed.R.Civ.P. 12(b)(3); *Bigham v. Envirocare of Utah, Inc.,* 123 F.Supp.2d 1046, 1047-48 (S.D.Tex.2000). Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of sustaining venue lies with the plaintiff. *Laserdynamics Inc. v. Acer America Corp.,* 209 F.R.D. 388, 390 (S.D.Tex.2002); *Langton v. Cbeyond Commc'n, L.L.C.*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003). On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff. *Braspetro Oil Services Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007). Venue in this case is based upon the general federal venue statute, 28 U.S.C. § 1391(a), which states:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

### III. ANALYSIS

#### A. Specific Jurisdiction

The "minimum contacts" prong of the personal jurisdiction test has been further refined to determine two types of personal jurisdiction: specific and general. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Specific jurisdiction is established when the plaintiff's cause of action arises out of or relates to the defendant's contacts with the forum state. See *Helicopteros Nacionales*, 466 U.S. at 414; *Bearry v. Beech Aircraft Corp.*,

4

818 F.2d 370, 374 (5th Cir.1987). A single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415-16 (5th Cir.1993); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir.1990). Plaintiff does not dispute that it was Plaintiff's East Coast office that first communicated with Defendant. However, Plaintiff does claim that on February 22, 2012, Mr. Cargnoni, President of Independent, filled out a credit application bearing Plaintiff's Houston office address. The commercial invoice that Fields sent to Independent on March 8, 2012 also bears a Houston address, calling for payment to the Houston office. However, making payments, opening a line of credit, and/or communicating with Plaintiff's Texas office are not sufficient actions to establish specific jurisdiction. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("combination of mailing payments to the forum state, engaging in communications related to the…contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts"); *Ranger Steel Services, L.P. v. Orleans Materials & Equip. Co., Inc.*, CIV. A. H-09-3111, 2010 WL 173543 (S.D. Tex. Jan. 14, 2010) ("mere obligation to make payments to a Texas resident is not sufficient to establish proper venue"); *Sysinformation, Inc. v. Prof'l Healthcare Billing Services*, A-09-CA-619-SS, 2009 WL 4640272 (W.D. Tex. Nov. 30, 2009) ("mere mailing of payments is not sufficient to establish either personal jurisdiction or proper venue").

Alternatively, Plaintiff alleges that specific jurisdiction over Defendant exists because of a forum selection clause in Plaintiff's General Terms and Conditions ("GTCs"). (Doc. No. 2-6.) The forum selection clause reads:

> All actions or proceedings arising directly or indirectly or otherwise in connection with, out of, related to or from this contract shall be brought only in state or Federal Court in

Harris County in the State of Texas, and Buyer hereby consents and submits to the jurisdiction and venue of such courts for the purpose of such actions or proceedings.

Forum-selection clauses are presumptively valid. *M/S BREMEN v. Zapata Off-Shore co.,* 407 U.S. 1, 12-13 (1972). Courts have routinely upheld similar forum selection clauses between business entities, and have declined to hear disputes that the parties have agreed must be filed in another forum. *Id., Afram Carreirs, Inc. v. Moeykens,* 145 F.3d 298, 301 (5th Cir. 1998). However, this is true only if the forum selection clause is a part of the contract. Plaintiff's GTCs were sent to Defendant on March 6, 2012, separate from the shipment of steel pilings. The terms and conditions were attached to a letter written by Mr. Pat Burk, Plaintiff's Executive Vice President, confirming that a credit account had been opened on Defendant's behalf. Both the letter and GTCs were allegedly sent to Defendant on the same day Plaintiff shipped the sheet pilings, March 6, 2012. Plaintiff does not allege that Defendant expressly agreed to the GTCs, but rather that by sending the GTCs to Defendant, who did not object, the forum-selection provision became a part of the contract.

Defendant makes three arguments regarding the forum selection clause: 1) Defendant argues it never received the letter, 2) the GTCs were not a part of the offer and acceptance, and 3) the forum selection clause materially altered the contract. The Court will address each argument separately.

### 1. No Receipt

First, Defendant argues that it never received the GTCs because they were never mailed by Plaintiff. The mailbox rule is "well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. United States*, 285 U.S. 427, 430 (1932). A threshold question for the application of the mailbox rule is whether

there is sufficient evidence that the letter was actually mailed. *Custer v. Murphy Oil USA, Inc*., 503 F.3d 415, 419 (5th Cir. 2007). Plaintiff provided an affidavit from their executive vice-president, Pat Burk establishing customary business practices:

> "On March 6, 2012, I sent a letter to Jack S. Cargnoni at Independent confirming that a credit account had been opened on their behalf and attaching the applicable "Terms and Conditions" of sale for this transaction…This letter was addressed to Independent at "5020 Thoms Run Rd, Oakdale, PA 15701." Per Fields' customary business practices, proper postage was paid on this letter, and the letter was placed in the post office receptacle at our office for delivery. This letter was not returned to us for any reason."

The Fifth Circuit has recognized that "[p]lacing letters in the mail may be proved by circumstantial evidence, including customary mailing practices used in the sender's business." *Wells Fargo Business Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir.1983). Defendant argues that it did not receive the letter, and characterizes Mr. Burk's affidavit as filled with bare assertions. Defendant provides an affidavit from Mr. Cargnoni, President of Independent, stating that Independent was never sent the GTCs (Doc. No. 2-1):

> "I never saw the letter or the attachment until Independent was served with the Harris County lawsuit. To be certain, I have diligently searched Independent's business records and I interviewed Independent's mail-intake personnel concerning Fields' contention that that letter was sent to Independent. Based on my investigation, neither I nor anyone else at Independent received the March 6, 2012 letter or any attachment to the letter."

The two affidavits together raise a fact issue. When only one party provides a sworn affidavit confirming receipt (or lack or receipt), such a fact issue is easy to resolve. *See Duron v. Albertson's LLC,* 560 F.3d 288, 291 (5th Cir.2009) (vacating summary judgment where the sender had "submitted no affidavits in support of the mailing" and, in contrast, the recipient had "provided a sworn affidavit that she did not receive" the document); *Geico Ins. Co. v. White*, 339 F. App'x 394, 397 (5th Cir. 2009) (GEICO provided circumstantial support for mailing in the form of an affidavit, but White provided no circumstantial evidence in support

7

of her claim that it was not received). Bare assertions of non-receipt are generally held insufficient to rebut the presumption of receipt. The Fifth Circuit has found it insufficient for a president to merely aver that the company never received the document, when others could have opened the mail at the company. *United Student Aid Funds Inc. v. Muracombi Enterprises Inc.*, 330 F. App'x 453, 456 (5th Cir. 2009). However, in this case, Mr. Cargnoni states that he interviewed the mail-intake person and inspected Independent's business records.

This case presents an evenly balanced fact dispute, where both parties have provided affidavits that go beyond mere assertions. The Fifth Circuit guides this Court to resolve "all facts contested in the affidavits in favor of jurisdiction." *Luv N' care, Ltd*, 438 F.3d at 469 (5th Cir.2006) (internal citations omitted). However, even assuming that Independent received the mailing, Independent makes two further arguments against personal jurisdiction.

### 2. GTCs Not Part of Offer/Acceptance

Independent argues that the terms of the GTCs, including the forum selection clause, did not become a part of the contract because it was not part of the acceptance. According to Fields, it shipped the sheet pilings from Pennsylvania and separately mailed the GTCs to Independent from Texas on the same day—March 6, 2012. (Doc. No. 6, at 2.) Plaintiff thus reasons that it accepted Independent's offer by both mailing the GTCs and shipping the requested sheet pilings. Defendant argues that these terms were not part of the contract, because the GTCs purported to alter a contract already formed upon delivery of the ordered goods, and was therefore invalid under Section 2.207 of the Texas Uniform Commercial Code.

Section 2.207(a) of the Code states: "A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed

upon, unless acceptance is expressly made conditional on assent to the additional or different terms."

However, under the Texas UCC, Plaintiff accepted Independent's offer before the alleged letter could become part of the agreement. The case *In Enpro Sys., Ltd. v. Namasco Corp.,* 382 F. Supp. 2d 874, 876-80 (S.D. Tex. 2005) is apposite. Plaintiff in that case ordered a steel plate from defendant, which was delivered in a timely manner to plaintiff. The defendant also sent a delivery ticket with the order that disclaimed all warranties, and, after the delivery, an invoice confirming the terms of that delivery ticket. *Id.* The defendant argued that the terms in those writings—including the limitation of liability clause—became a part of the contract. The Court disagreed, concluding that "the contract formation occurred when [the defendant] accepted the offer by shipping the steel plate, before [the plaintiff] had any opportunity to review the delivery ticket/invoice terms." *Id.* at 880. Indeed, the court stressed that "probably as early as the moment the steel left [defendant] for shipment to [plaintiff], and certainly by the time it arrived at [plaintiff's] receiving department ... each party had an enforceable contract against the other." *Id.*

This Court also considered *Enpro* to be persuasive authority in *Contractor's Source Inc. v. Hanes Companies, Inc.*, CIV.A.09-CV-0069, 2009 WL 6443116 (S.D. Tex. Dec. 29, 2009). As in *Enpro,* the plaintiff in *Contractor's Source* submitted a purchased order that functioned as an offer, which Defendant accepted upon delivery of the goods. This Court found that the invoice sent after Defendant accepted the goods could not have constituted an acceptance because the enforceable contract had already come into existence. *Id.* This Court distinguished *Enpro* from *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635 (5th Cir.1991). In *Permian,* the court decided the question of whether the plaintiff, the seller in that case, was

9

entitled to contract interest. The court examined whether a provision for interest included in the order invoices became part of the parties' contract. The court concluded that this provision was part of the contract as either part of the offer or part of the acceptance under § 2.207, noting that the seller "delivered the [goods] with invoices that were stamped by [defendant] upon receipt," and that defendant "never objected to invoice interest provision." *Id*. at 654. This Court distinguished *Contractor's Source* from *Permian* because the invoice with the extra terms in *Permian* were delivered *with* the goods, and were acknowledged and stamped upon receipt. This Court found that the "*Permian Petroleum* decision explicitly addresses the situation wherein the additional contractual terms accompany the goods in response to the order/offer, and therefore form *part of* the acceptance." *Contractor's Source Inc.,* 2009 WL 6443116, at *8. *Permian* is factually distinct from *Enpro, Contractor's Source,* and this case. Specifically, *Permian* is distinguishable from this case for two reasons; here the Defendant did not stamp or acknowledge the GTCs; rather, Defendant states the GTCs were never received. Second, the GTCs did not accompany the goods. Thus, this Court finds that an enforceable contract had already come into existence upon delivery of the goods.

The holding that the GTCs are not part of the contract finds additional support in Texas law, interpreting what can constitute a valid written confirmation under § 2.207. In *Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enterprises,* 625 S.W.2d 295 (Tex. 1981) for example, the Texas Supreme Court noted that "[c]ourts and scholars have questioned whether [§ 2.207] can apply at all to a sale in which the goods have already been shipped and accepted and a memorandum such as an invoice or statement altering the terms is sent contemporaneously with or subsequent to the shipment of the goods." *Id.* at 299. The court found that a monthly statement sent after the goods had been shipped did not constitute an

10

acceptance, even though plaintiff had failed to object. *Id*.at 300; *see also Tubelite v. Risica & Sons, Inc.,* 819 S.W.2d 801, 804 (Tex.1991) (noting that the offer and acceptance occurred before the forms containing the additional terms were sent and holding that statements of account sent after delivery of the goods were not confirmations within the meaning of § 2.207).

Furthermore, the Fifth Circuit has found that the written confirmation provided for in § 2.207 is recognized "primarily as a writing necessary to satisfy the statute of frauds when the agreement reached is at least partially unenforceable...." *Mid–South Packer, Inc. v. Shoney's, Inc.*, 761 F.2d 1117, 1122 (5th Cir.1985). In so holding, the *Mid-South Packer* court found that the invoice rendered enforceable a contract previously unenforceable under the statute of frauds. *Id.* at 1123. In contrast, the *Contractor's Source* court found that the purchase order, along with Defendant's shipment and Plaintiff's acceptance of the goods, definitively satisfied the statute of frauds. *Contractor's Source,* 2009 WL 6443116*,* at *8; Tex. Bus. & Com.Code.§ 2.201(c)(3). Similarly, Independent provided a purchase order, Plaintiff shipped the steel piling products to Independent, who accepted the product. The GTCs, and accompanying letter, are not necessary to satisfy the statute of frauds. Thus, the Court finds that the GTCs and letter sent by Plaintiff to Defendant on March 6 constitutes neither an acceptance nor a written confirmation within the scope of Section 2.207.

### 3. GTCs Materially Altered the Contract

Even if the GTCs were considered a confirmation or a part of the acceptance, the forum selection clause is a material alteration to the contract and would not be integrated under § 2.207. § 2.207 provides that "additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless…they materially alter it…" Tex. Bus. & Com. Code Ann. § 2.207 (West). A merchant is a person

who "deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." Tex. Bus. & Com. Code Ann. § 2.104 (West). As Fields and Independent are both merchants, even those terms not expressly agreed to by the parties can become part of the contract if the additional terms are not material. An alteration is material "if a change to that document causes it to 'fail to reflect the meaning and intent of the parties to the agreement.'" *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 588 (Tex. App. 2000) (citing *Associated Sawmills, Inc. v. Peterson*, 366 S.W.2d 844, 848 (Tex. Civ. App. 1963).

Forum selection clauses are typically considered material and therefore require express assent to become binding. *CECG, Inc. v. Magic Software Enters., Inc.,* 51 F. App'x 359, 364 (3d Cir. 2002); *Cunningham v. Fleetwood Homes of Ga., Inc.,* 253 F. 3d 611, 621 n. 13 (11th Cir. 2001) (noting that forum selection clauses are generally considered material terms under state law variants of the UCC); *Hugo Boss Fashions, Inc. v. Sam's European Tailoring, Inc.*,293 A.D.2d 296, 742 N.Y.S.2d 1 (2002) (finding that invoice containing forum selection clause and waiver of jury materially altered the parties' oral contract for sale of goods); *Product Components, Inc. v. Regency Door and Hardware, Inc.*, 568 F.Supp. 651 (S.D.Ind.1983) ("forum selection clauses contained in seller's acknowledgment form and invoice materially altered the parties' contract").

Cases that have found similar clauses, such as an arbitration clause, not to be material, were cases where parties had signed an agreement with the clause, or such clause was present in parties' previous course of dealings. *See, e.g., Schulze & Burch Biscuit Co. v. Tree Top, Inc.,*

831 F.2d 709 (7th Cir.1987) (holding that an arbitration clause in a written confirmation was not a material alteration because it was consistent with the parties' previous course of dealing); *In re Cotton Yarn Antitrust Litigation,* 505 F.3d 274 (4th Cir.2007) (holding that terms consistent with trade usage or course of dealing may represent additional terms but generally do not materially alter a contract); *Standard Bent Glass Corp. v. Glassrobots Oy,* 333 F.3d 440, 446-48 (3rd Cir.2003) (both incorporation by reference and lack of material alteration allows enforcement of arbitration clause; no material alteration when prior course of dealing was consistent); *cited by Oceanconnect.com, Inc. v. Chemoil Corp.*, CIV.A. H-07-1053, 2008 WL 194360 (S.D. Tex. Jan. 23, 2008). Here Defendant has not signed any document acknowledging Plaintiff's GTCs, nor is there any evidence that parties have dealt with each other before. Indeed, Defendant states that he had never seen Plaintiff's GTCs before this lawsuit was filed. (Doc. No. 2-1.) Because the forum selection clause was never part of the contract, this Court finds that it cannot assert specific jurisdiction over Defendant.

## B. General Jurisdiction

Even where specific jurisdiction is lacking, however, a court may nevertheless exercise "general jurisdiction" based on a defendant's contacts with the forum unrelated to the controversy. *Helicopteros Nacionales*,104 S.Ct. at 1872.  To exercise general jurisdiction, the court must determine whether "the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction." *Stuart v. Spademan*, 772 F.2d 1185, 1190 (5th Cir. 1985). The minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state. *Jones v. Petty-Ray Geophysical Geosource, Inc*., 954 F.2d 1061, 1068 (5th Cir. 1992).

The party seeking to assert jurisdiction must present sufficient facts as to make out a prima facie case supporting jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000). To make a prima facie showing of general jurisdiction, the plaintiff must produce evidence that affirmatively shows that defendant's contacts with forum that are unrelated to litigation are sufficient to satisfy due process requirements; those unrelated contacts must be substantial, continuous and systematic. *Id.* Plaintiff has failed to make a prima facie showing of Defendant's contacts with Texas. Mr. Cargnoni's affidavit demonstrates that Independent's contacts are not continuous and systematic so as to support a finding of general jurisdiction. Mr. Cargnoni states that Independent "is organized under Pennsylvania's laws and operates from its principal office in Oakdale, Pennsylvania…Further, Independent has no Texas offices and it has never continuously or systematically engaged in business in Texas." Plaintiff has not provided any evidence contradicting Mr. Cargnoni's affidavit. Thus, the Court does not find that it has general jurisdiction, and must dismiss this case.

## C. Venue

The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss an action where venue in that court is improper. *See* Fed.R.Civ.P. 12(b)(3). Once a defendant raises the issue of proper venue by motion, the burden of proof is placed upon the plaintiff to sustain venue. *See Seariver Maritime Fin. Holdings, Inc. v. Pena,* 952 F.Supp. 455, 458 (S.D.Tex.1996). The Court does not find venue to be proper in Texas. Defendants do not meet any of the requirements stated in the federal venue statute, 28 U.S.C. § 1391(a). Section 1391(a)(1) provides for venue based upon the residence of the defendants. As this Court has already discussed, Defendant does not reside in Texas. Section 1391(a)(2) sets forth the so-called "transactional" basis for venue. This provision enables a Plaintiff to bring suit in the

place where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). A substantial part of the events giving rise to the claim did not occur in Texas. Aside from extending the credit line and asking for payment, Plaintiff's Houston office was not involved in the events giving rise to the claim. Finally, this Court has found that Independent is not subject to personal jurisdiction in Texas. See 28 U.S.C. § 1391(a)(3). Thus, a dismissal based on a lack of personal jurisdiction, rather than a transfer of venue, is appropriate.

## IV. CONCLUSION

Finding no basis for personal jurisdiction, the Court **GRANTS** Defendant's Motion and dismisses Plaintiff's claims without prejudice.

**IT IS SO ORDERED.**

**SIGNED** this the 13th day of November, 2012.

*[signature]*

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**
**SOUTHERN DISTRICT OF TEXAS**